Please call the next case. State of Illinois, 1173, people v. William Lenius. Introduce yourselves, please. It pleases the Court, E. J. Sannin on behalf of William Lenius, the petitioner appellate in this matter. Assistant State's Attorney Brian Hodes on behalf of the people of the State of Illinois. Mr. Hodes?  Thank you, Counsel. Judge, I'd be asking you to reserve about five minutes for rebuttal. As this Court is aware, this matters before this Court on the District Court Judge's dismissal of a post-conviction petition at the second stage under the Illinois Post-Conviction Act. The case went beyond the first stage. It was not summarily dismissed. It was then briefed by many counsel to the point where I got it, and then it proceeded forward as to a short hearing. In fact, the case was pending for a number of years, wasn't it? I believe the post-conviction petition alone, Judge, was pending for probably 11 years. I think one of the things that was actually discussed at the hearing was that none of the parties were still around except for Mr. Thielander, who was still practicing. Counsel, why is this res judicata? Why is it not? Yes, sir. The reason it's not, and I think the Court and Blair sets forth that if it was res judicata, at least as to the first issue that we raised as to the searches and the motion to quash or the failure to file a motion to suppress as to that one issue. As Blair points out, that if it was res judicata, the Court should at least dismiss that portion of the post-conviction petition at the first stage. But the Court didn't. The Court let this proceed to the second stage. And at the second stage, which means that these are arguments that are not frivolous or that have not been waived, the Court allowed this matter to get to the second stage, therefore defeating what Blair says. Suppose the Court just made a mistake and failed to dismiss it at the first stage on the basis of res judicata? As to the first set of issues that we raised, Judge? Well, I think even if it was a mistake, the Court found that there had to be something. I mean, the Court didn't simply just say at the initial time when it went from the first stage of the proceeding into the second stage of the proceedings that this cannot be brought. There's actually nothing on the record to discuss whether or not the Court believed there was an issue or not. So based on that, if it makes it to the second stage, if you follow Blair and if you follow the statute, there had to be an issue for the Court to decide that wasn't. Could I just interrupt you for a second? Did the trial judge within the first 90 days make a ruling whatsoever as to whether it was frivolous or without merit? No, Judge. Well, then 90 days passed, and after that, automatically, he or she, I don't have the... I believe it was he at the time. Then he would have had to have doctored it without making the determination that it was frivolous or without merit. Is that correct? That is correct, Judge. And you're saying there was no ruling? There was no ruling. Within the first 90 days. So in effect, there has not been a determination that anything was frivolous or without merit. It was just by operation of law that it had to be doctored because more than 90 days passed, and the judge hadn't ruled on the petition. Well, Judge, with all due respect, I agree to that analysis because of this. The judge has... I'm sorry. You what? I disagree with that analysis. Is there any case that says if the judge doesn't rule within 90 days that he or she has made a decision that the petition is not frivolous or without merit? Judge, I believe the Blair case speaks to that because Blair addresses the statute, 122-2.1, parenthesis 2. If the court, within those 90 days, the court has to determine whether or not or has the opportunity to determine whether or not there is a frivolous claim or a claim that has been waived, the court could have looked at the brief and determined that at least that first issue that was raised, bilineous, was frivolous or res judicata applied. But he did not. Well, what's the difference? I mean, in order to get to a third stage, even on the first set of issues that you raised, you need... It's the petitioner's burden to make a substantial showing of a constitutional violation of... And that standard applies. And the question is whether the petitioner has made that showing regarding the first set of issues. Judge, if you follow the Act, I agree with you that that is what the Act says, that there has to be a substantial showing. It's your burden. It is the burden, but burden is a civil burden of preponderance. It is not a criminal burden beyond a reasonable doubt. But there is a case law that explains what a substantial showing is. And the question is, does the petition as it stands reach that level of showing? Judge, we believe the petition as a whole does, because there's two issues that interlock with each other. There's the issue of the res judicata that the court has brought up and whether or not his constitutional rights as to a search, unreasonable search as to whether or not a motion to quash should have been granted and a motion to suppress a statement. But that issue, Judge, in itself we believe has been substantially shown. But when it ties into the ineffective assistance of counsel argument, Judge, it enhances the showing that we substantially showed that there was, by a preponderance of the evidence, a substantial showing of where this should have gone to the third stage. Let me ask you this. Regarding the search issues that he raises, what is he contending that wasn't previously addressed? Well, Judge, I think there's an issue that whether or not a search, whether a motion to search was ever even filed or was it a motion to quash a search. Well, there was a motion to quash an arrest and then the fruits of the arrest was filed. There was a hearing as to that. There was also a motion to suppress a statement. A motion to suppress a statement, but there was never a motion to quash a search without a warrant and without consent. That was never done. But it was to quash evidence. It was a motion to quash an arrest. It was a motion to quash an arrest. And to suppress the fruits there. So that's the evidence that comes from the allegedly unlawful arrest. Correct. That was adjudicated. But that is separate from whether or not there was a search warrant, a consent to search. Let's assume for a second the state's argument. No. How is it separate? Because what if the state argues that it wasn't an arrest at the time? There was no arrest warrant. They did argue that there was no arrest at the time. And the court ruled when the police were at this young man's home that it was not an arrest. That there was a consensual entry, a consensual search, and a consensual accompanying him to the police station. The judge made those specific rulings. He made the rulings, but the ruling depends upon the first finding that there was no arrest. Yes, and he ruled there was no arrest. Correct. So in other words, doesn't that end the matter? How can you reopen that? Because there was no motion to suppress. If there's no arrest, there's an issue of whether or not there was a search warrant or a consent to search. Let me ask you this question. Do you think the trial judge, after having just ruled on the motion to quash arrests and suppress evidence, and just having determined that the entry was consensual and the search was pursuant to a consent to search and his decision to accompany the officers to the police station was consensual, do you think that the trial judge would have spent any time, had trial counsel then immediately said, oh, by the way, I want to file a motion to suppress based on an illegal arrest of the defendant in his home. Do you think that the trial judge would have spent any time considering such a motion? Judge, with all due respect, I believe he could have. This goes back to your previous argument. We don't know what the judge would have done. It doesn't matter what he would have done. How, if he said it's a consensual entry, could he possibly have considered that there was an illegal entry, when he said it was a consensual entry? He based the consensual entry on a motion to quash an arrest. No, he based it on testimony. Based on testimony based on a motion to quash arrests that was filed. There was testimony presented as to the motion to quash. Let's assume for a second, Judge, if there was no motion to quash the arrest, and it was an issue of whether or not it was a consensual search or a non-consensual search, if the issue of arrest had never come up, the proceeding would have gone differently. It would have been a different proceeding altogether. But it wasn't. I mean, we can't consider something that didn't happen, young man. I understand that, but that's why... Okay, don't argue. Let's consider something that didn't happen. What happened is that there was a motion to quash arrests filed and to suppress the fruits thereof and a motion to suppress statement. And the judge ruled, as I said, that the entry was consensual, that the search was consensual, that him accompanying to the police station was consensual, and also said he did not believe, in terms of the issue of the denial of counsel, that he did not believe that counsel arrived or was hired by the defendant or even that the defendant knew that counsel was trying to get there prior to the defendant giving his statement. All those things are in the judge's rule. Correct, Judge. So now you're asking us to just ignore what the judge said? I'm not asking you to ignore what the judge said, but I'm asking you to look at a specific issue that was specifically as to whether or not the consent. The question becomes whether or not if there was no motion to quash the arrest and there was a separate motion to suppress the fruits of a search, an illegal search,  I've never in my life really seen a motion to suppress evidence without a motion to quash arrest. I haven't as being on the bench for 30 years. What would be the legal grounds for that? It has to be that the individual was arrested at the time without probable cause and without an arrest warrant. Well, Judge, I'll give you an example. Let's assume for a second there's never an arrest. The police come to your house. Well, now you're changing the assumption. You're asking me how it would fit. How does it fit? Police come to your house. They knock on your door. You invite them in or you don't invite them in. They come in and search your house without a search warrant. You've not been arrested, but then you get charged down the road. You would have to file a motion to suppress. Suppress what? To suppress the search of your house. Why? Because... What if nothing is recovered? Let's say they take a gun and they take some narcotics. Well, then, then, then... If they take a gun and they take narcotics, they're going to arrest you. But they may not. It happens all the time, Judge. Give us a case. What's your strongest case? What is any case? Give me one case in the appellate court or court of review that says that that precise factual scenario that you've laid out for us has ever occurred. Judge, I can name many federal cases that I've represented in defense. Give me one. Judge, a case in the U.S. v. Bradley. They let him go three times. Give me the cite. Judge, it's a federal case. Can you cite it in the case and then can you bring it? No. No, Judge. Well, then you can't. You can't. Well, Judge, you're asking me. Well, but this is your argument, Counsel. Judge, it is. And I say if you look at Blair, which is a case from the appellate court that specifically says, within those 90 days, if the court had the opportunity to determine whether or not it was frivolous, the court itself chose not to dismiss those counts. Therefore, res judicata would not apply. Blair interprets the post-conviction statute on the proceedings as it goes through. Are there questions as to the other issues that were raised, the ineffective assistance? Here's one question regarding the expert analysis of the evidence that was recovered. How do we know that the evidence wouldn't be incriminatory? We don't. And that's the problem. Well, that's not a problem. Well, Judge, that is a problem. The question is, what is your burden of demonstrating that a constitutional violation has occurred if the evidence turns out to be that, in fact, what was recovered from the home is consistent with what the bomb makeup was, and that seals your client's fate? But you're not entitled to an evidentiary hearing. You're not entitled to go forward to any further post-conviction proceedings after you've been dismissed in the second stage unless you make a substantial showing. And you can't make a substantial showing unless you can demonstrate that the trial would have ended differently. It couldn't. Well, Judge, with all due respect, that's not what Sutherland, People v. Sutherland says that it could have played a dominant role or prominent role. What could have played? Sutherland does not say that. Sutherland is a case that involves a horrific crime with, I think it's fibers and hairs and tire marks. Tire marks and shoes. And shoes. That there was evidence that contradicted that the defendant had the shoes at the time of the offense, and I think he had evidence that he bought them months after the offense, and that he didn't have the tires on his car that were recovered. And so that's why they said it was ineffective. There was substantial evidence of ineffective assistance that was presented. But, Judge, hold on. Whereas, in this case, the defendant hasn't shown that testing the materials would have helped his case. But, Judge, we also don't know if not testing. The problem is, if you look at what Sutherland says, it says it's speculation. Well, Judge. And 11 years later, we still don't know, which suggests maybe it doesn't make any difference. Well, I disagree, Judge, because we haven't had access to it to test it, which would happen in an evidentiary hearing. And, Judge, going back to your question. Did you ask at the second stage of the trial, Judge, to have the evidence taken out and tested? At the second stage, no, Judge. That's what I mean. Why? Because it's not an evidentiary hearing, Judge. And, Judge, going back to Sutherland. For purposes of amending your petition. You could have said, Judge, I can't make a substantial showing unless I've analyzed the evidence that's been recovered to confirm that it is, in fact, at odds with the evidence that was introduced at trial. And you're tying my hands. And the judge might have reacted favorably to you. But, you know, there was no such request. And we could only offer why. Well, Judge, with all due respect, going back to the whole argument that happened before. We don't know what the judge would have done. That's exactly what this Court put before the other panel that was before you. We don't know what the Court would have done. And you only get one chance. I understand that, Judge. And even if that chance lasts 11 years, an end must come. Don't disagree with me, Judge. Judge, just briefly going back to, and then I will sit down because I want to reserve some time. Judge Lansing, going back to Sutherland. The language in Sutherland says, ineffective for failing to investigate and present evidence that could have. And that's what they say could have. Not that it would. Not that it's guaranteed to play a prominent role in discrediting physical evidence. Because that case was about physical evidence. Yeah, but you're arguing a point. If my recollection serves me, and it normally does, you're arguing the point about the hairs and the fibers. That quote is regarding the hairs and the fibers because the State overstated the value of the hairs and fibers. And judges don't have hair. But they did not. That statement was not attached to counsel's ineffectiveness for failing to present evidence regarding the tire marks and the shoe marks. But it played a totality in the whole thing, Judge. And here we do have hair. We do have hair that wasn't tested, that was found on a secondary device in an individual's house. That they argue was linked to Mr. William. Counsel, address the actual innocence claim. Judge, as for the actual innocence claim, there were several letters and information received by Mr. Alenius and his previous counsel, many of his previous counsel, in which there's a statement from an ATF agent, BB, regarding this whole collaboration to set him up. There are anonymous letters sent to him. There's letters from Tim Richardson, who was an individual who was dating Ms. Marshall at the time. I don't even think your statement that there is a statement from an ATF agent is a fair characterization of the record. There's a statement attributed to an ATF agent. Attributed to an ATF agent. And there's nothing? Nothing. And that would have been a simple thing to have confirmed. Did you ever try to reach out to Agent BB? Yes, we did, Judge. He wouldn't talk to us. And, I mean, if this Court thinks Agent BB is going to talk to us about this case, I mean, with all due respect, that just doesn't happen in the real world. Do we think Agent BB is going to write their client a letter saying that Agent BB … No. Well, Judge, that's an issue for an evidentiary hearing. You don't know that? We don't know that.  This Court is speculating that the Tim Richardson letters are in fact … All we're going to rule on is whether there's been a substantial showing. I understand that, Judge. That's the only question before us. That's correct, Judge. The letters from Tim were not newly discovered, correct? I'm sorry? The letters that allegedly were written by Tim Richardson were not newly discovered. They had them prior to trial. Two of the letters, correct. Well, how many letters are there from Tim? Judge, with all due respect, I believe there was three. I may be wrong. I may be wrong. But I thought there was three. Because there was one anonymous that's not signed. And I believe later in something else it indicates that he was the one that … But there was postcards received by who is believed to be Ellen Marshall and some other information regarding what happened that night. All right. Maid Police Corp. Brian Huddy on behalf of the people of the State of Illinois. I cannot hear you. I'm sorry? You have to speak up. I can't hear you. Oh, I'm sorry. Assistant State Attorney Brian Huddy is on behalf of the people. I guess first I would like to point out that Blair extends to first and second stage. Blair isn't limited to the first stage. A judge is not obligated at the first stage of the post-conviction hearing process to review something under res judicata and dismiss it at that point. And the judge doesn't effectively waive the judge's right to dismiss it on that basis later on. Additionally … And in fact, counsel, what happens when a post-conviction petition is filed by counsel on behalf of the petitioner? Is there a first stage review at all? Well, I mean, in this case it was … I'm asking you just generally. Generally a post-conviction petition is filed by counsel on behalf of a prisoner. Is there a first stage review at all? That depends on the judge. I think it's probably the best … I don't know. Well, what does the first stage review do? It only appoints counsel if there's a … Oh, you mean a supplemental petition. Well, it doesn't have to be a supplemental. It could be the original. Let me just say … So long as he's appointed by … so long as he's represented by counsel. Counsel, look, I mean, Judge Garcia, let me just say this. As a judge who sat for 22 years, I did have post-conviction petitions that were filed by counsel that I did dismiss in the first 90 days. Well, you can dismiss them in the first 90 days. There's no question about it. But it doesn't mean that it's a first stage dismissal because it really is a dismissal based on res judicata or based on the frivolous nature of the petition. But the second stage, the distinction between a first stage and a second stage, is not necessarily the quality of the pleadings. It is whether the individual can proceed pro se or not. If he, in fact, is not proceeding pro se at the commencement of the proceedings, then there really isn't a first stage in the sense that it's a question of whether appointed counsel should occur. I … Okay. Regardless, even if the court had decided that part of the case was barred, say, in the first argument to the extent that it was advanced in the initial petition, a court can't just partially dismiss a post-conviction petition at the first stage. So … The whole thing would have gone on at the second stage. Yes, at that point. It's only at the second stage that the court can divide up the claims in it and make decisions. And usually that's based on … Who said so? I don't know the citation offhand. I just know that that's the rule. It wasn't something that was an issue here. To be found. I … All I know is that you can't partially … I don't have the … It's not in the statute itself that says you have to let all of it go or none of it go at the first stage. But I do know that that's …  There's case law. Yes. And then at that point, when you bring in counsel, counsel is permitted to supplement or amend the petition in order to state the claims more clearly to the court and in some cases add claims. So that's the idea. And then at the second stage, on a motion to dismiss, the trial court, or more specifically the post-conviction court, can determine with respect to specific issues whether any of them warrant an evidentiary hearing. In this case, the court reviewed the issues and found that none of them warranted an evidentiary hearing. But it was only at that point that the court could … If it found any of them, it was only at that point that race judicata kicked in, in this case. And Blair is not limited to the first stage. And I think the other case we cited, Neil, although I'm not … Actually, it was the second stage dismissal, when we were talking in our brief about race judicata and its application to this case. All of the arguments the defendant made in the first argument were decided at the trial level. They're all basically an attempt to revisit what went on during the pretrial proceedings. They were all decided at the pretrial level. It went up to this court back in 1997. Well, it went up before that, but this court published an opinion in 1997, in which it upheld the trial court's rulings on the defendant's motions to quash arrest and suppress evidence and to suppress statements, which I think encompasses what the defense was arguing about. And this court affirmed the trial court's ruling. The defendant then took it up, attempted to take it up to the Illinois Supreme Court, and was unsuccessful, and the U.S. Supreme Court, and was unsuccessful. At this point, all these matters are race judicata. They've been fully and completely litigated. So there's nothing to these allegations, and they were properly dismissed on that basis. I guess I'll go to the second issue briefly, unless the court has questions. He says he's not objecting to the quashing. I mean, not the quashing of the arrest or the statements, but the failure to quash the search. He's making that distinction there. I don't believe that that's a valid distinction in this case, mainly for the reasons that Roberto asked. And that's why counsel was ineffective, because they failed to file that motion. But there's no case law in support of that that I'm aware of, and none that they made us aware of. If the judge ruled there was no search, then there's no charge. Exactly. I mean, I think Your Honor's made my argument better than I probably can right now at this point. So I will go to the next one, which was the ineffective assistance of counsel claim. The one that counsel honed in on was his claim about a failure to test certain, failure to perform certain undefined tests on certain objects. I think one of the ones he did mention was hair, but it was unclear. First of all, that was a strategic decision made by counsel, trial counsel. He didn't know what the results would be, obviously, and certainly the results could just as well have been negative. Second of all, even if the results had been positive, this was not, in many respects, like the case the defendant relies on, Sutherland, because in Sutherland, the evidence against the defendant was primarily physical evidence, while in this case, as this court put it, the record reveals evidence of modus operandi, and along with circumstantial evidence, the evidence links defendant to the stereo bomb. The stereo bomb provides overwhelming evidence the defendant built and delivered the toolbox, etc. The most powerful evidence was defendant's multiple confessions. In Sutherland, there were no confessions, and also in Sutherland was a decision decided at the third stage, and in Sutherland, there was proof that this evidence that was untested would have actually gotten a good result, and finally in Sutherland, the court noted that its decision was not based solely on ineffective assistance of counsel, but also on a decision it had made prior to that, it had remanded the case before, because it found that there were some overstatements by the prosecution about the strength of the physical evidence, and that this confluence rendered prejudice to the defendant. What about counsel's argument that his client's lawyer had persuaded the defendant not to testify? What's your response to that? First of all, that argument is rooted in, in terms of evidence, it is not rooted in evidence, it is rooted in a statement that the defendant was unable to get notarized after 12 years or 11 years or whatever, and the only notarization, the only evidence supporting it is counsel's representation that the defendant wanted to get it notarized, which isn't the same thing as saying it's the truth, and that applies to the defendant's entire third argument about the actual innocence. Furthermore, in this case, the trial court went out of its way to make sure the defendant, knowingly... This didn't have anything to do with notarization. You're talking about the... I'm talking about the affidavit supporting the claim. The actual innocence in the letters. But I'm asking you about trial. Your trial counsel gave erroneous advice to the defendant, and he felt that he was as a result of that prejudiced, in terms of whether or not he should testify. The defendant claimed, I believe, that... And he included this in his affidavit, the defendant did. But it was in the... I believe the allegation was in the affidavit that wasn't notarized. Notwithstanding that, in this case, the defendant failed to assert his right to testify, and the trial court specifically made sure that he was aware of that, of his right to testify, and was electing to... not to testify, to exercise his right not to testify against self-incrimination. So that argument would be forfeit. And so he already knew he could testify, isn't that correct? He testified. He testified. Exactly. He clearly knew he could testify. Correct. And as I said, the trial court, in this case, went out of its way to make sure, although the trial judge was not required to do so, that the defendant knew about his right to testify and was not going to exercise it, and asked the defendant, and the defendant assented and said, yes, I agree that he discussed the matter with his counsel and was not going to testify. During the entire proceedings, he said. I mean, I can't remember the language, but there was this... Including at lunch hour. Yes, that he had discussed this with his lawyer and decided not to testify. Precisely. And it's his decision, not his counsel's. Yes. And, I mean, counsel is supposed to provide recommendations, and they discussed it. That's exactly what counsel was supposed to do. So that claim is defeated by the record. I believe, unless there's something you'd like me to discuss with the actual innocence arguments, which I think that you addressed, as well as I certainly did, that if you have no other questions, I'd just like to simply ask that this Court affirm the dismissal of the defendant's post-conviction action for the reasons set forth above in our brief. Oh, I'm just asking that this Court affirm the dismissal of the defendant's post-conviction action. Thank you. Thank you, Your Honors. Brief. Very brief. Very brief. Just addressing a couple of the questions that were asked by Your Honors. Number one, one issue that counsel brought up when he was reading the Court's decisions is that the linking of the defendant to the bomb that was found in the house. That's where the hair follicle was, on the bomb that was found in the house. His counsel at the time, his trial counsel, did not take an opportunity to get that tested when funds would have been provided. That's not a strategic decision for a trial. That's ineffectiveness. Why is it not strategic, counsel? If a lawyer is looking at all the evidence against their client, including multiple confessions to the crime, a written confession to the crime, PVC or pipes and duct tape and all these things found in the defendant's place, why is it not strategic to risk testing something that would further strengthen the state's case? Well, first of all, the evidence presented by Mr. Lennius is that he didn't make those statements. They were coerced out of him. If you can't re-litigate something... No, I'm just saying, counsel, why, after the motion to quash arrest, suppress evidence and suppress statements has been denied, he knows all this stuff is going to come in. Would he take the chance to test something else that might prove detrimental to his client? Why is that not trial strategy? Because it could prove that he also wasn't involved. But he doesn't know the answer. Now, if he had gotten the results, that's different, but he doesn't know whether or not it hurts his client more or not because he never took the time to test evidence that is sitting in front of him where the funds were made available for him to test it. How is that strategic trial preparation not to test something that they claim links your client to something? Oh, I could probably, if I had a few minutes, go and find 10 cases where the lawyer did test the evidence and it did link his client to the crime and then, of course, there was a claim that the lawyer was ineffective for having the test done. Well, if you take all the evidence Your Honor has put forth, there's nothing to lose by testing the sample. There's nothing to lose by testing the gunpowder. Your common sense. No, with all due respect, if I was trying this case, that's the first thing I would have tested. The first thing, that and the gunpowder because that's the physical evidence that the state relies on to get a conviction. Then you look at even the state's expert. The state expert testifies that the only thing that's common between what's in the bomb and what's at the defendant's house is guitar wire. There's nothing else. So why wouldn't you get a test? It would be ineffective not to get a test, Judge. With all due respect, that's the first thing that a defense counsel should do. That taken in conjunction with all of the other evidence, counsel, does that raise it to the level of sufficient prejudice in order to and the likelihood that he would prevail required to meet in order to show an effectiveness of counsel? Judge, I believe so. If you take that, put it together with the fact that his lawyer told him that if he testifies, he can only testify in this matter in a certain way, which involves, which is set forth in his affidavit that he would have to admit certain things that the cops were saying are true. He would have testified even if the court found that there was no coercion in the statement, that he didn't give that statement. This trial would have been very different if A, if this stuff would have been tested, B, if Mr. Linnaeus would have testified because he would have said that what happened at the police station didn't happen. Even if he got erroneous, I mean, even if he got advice that was erroneous, it's still his decision. He made a decision. He didn't say that the lawyer prevented him from testifying. Judge, I disagree. If a defendant is sitting on the stand and his attorney is asking him questions to get him to an answer, what is he supposed to do, start fighting with his lawyer during the trial? That's what you're asking to be done at this point, Bennett. If that is your response to this argument, you are asking a defendant to start fighting with his attorney in front of a jury. If Mr. Linnaeus wants to answer questions... The lawyer doesn't testify. The lawyer asks a question and then the defendant answers it. If the judge allows him to answer it. Sir, what happened as you entered as the police came to your door? What if he doesn't ask that question? Well, I don't know how else he can answer, counsel. Direct examination is non-leaving questions and then the defendant gets an opportunity to respond. That's correct. And if his attorney doesn't ask him the questions, appropriate questions, then how does he get his story out? If his lawyer says, I'm not putting you on the stand or I'm not going to ask you questions unless you say... He didn't say he's not going to put him on the stand. Judge, they never asked the attorney on the record whether or not he's going to put him on the stand.  But that's based on the advice given to him by his lawyer. His lawyer told him he would only ask him certain questions and he had to answer them certain ways. I think fighting in front of a jury, that's detrimental. How can that even happen? If the lawyer doesn't ask the defendant the questions, he can't ask them. On cross, they're just never going to get up and ask anything then. So how does he get his story out? So he made that decision to waive his right to testify based on bad advice of counsel. So Judge Hall, going back to your question, if you take everything in totality, we've met the substantial... By civil preponderance, we've met the substantial showing an evidentiary hearing should be required. Thank you, counsel. This matter will be taken under advisement. This court is adjourned.